RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0169p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellant*,

      *v.*

RICHARD BISTLINE,

                *Defendant-Appellee*.

No. 13-3150

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 09-0085-001—James L. Graham, District Judge.

Argued: June 19, 2013

Decided and Filed: June 27, 2013

Before: GILMAN and KETHLEDGE, Circuit Judges; and LUDINGTON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Benjamin C. Glassman, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellant. Jonathan T. Tyack, TYACK, BLACKMORE & LISTON CO., L.P.A., Columbus, Ohio, for Appellee. **ON BRIEF:** Benjamin C. Glassman, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellant. Jonathan T. Tyack, TYACK, BLACKMORE & LISTON CO., L.P.A., Columbus, Ohio, for Appellee.

_____

## OPINION

_____

KETHLEDGE, Circuit Judge. In a sense we have already decided this case. "Richard Bistline pled guilty to knowingly possessing 305 images and 56 videos of child pornography on his computer. Many, if not a majority, of those images and videos depicted 8- to 10-year-old girls being raped by adult men. Under the Sentencing

_____

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

Guidelines, Bistline's recommended sentence was 63 to 78 months' imprisonment. The district court rejected that recommendation and instead sentenced Bistline to a single night's confinement in the courthouse lockup, plus ten years' supervised release." *United States v. Bistline*, 665 F.3d 758, 760 (6th Cir. 2012) (*Bistline I*). The government appealed that sentence on grounds that it was substantively unreasonable.

We agreed and vacated Bistline's sentence. We held that Bistline's guidelines range should have been—but had not been—"the starting point for his sentence." *Id*. at 764. Turning to the sentencing factors set forth in 18 U.S.C. § 3553(a), we said that many of the district court's comments "served to diminish" the seriousness of Bistline's offense, *id.*; that Bistline's crime caused "great harm" to its victims, *id.* at 766; and that "a term of supervised release is simply not enough to reflect the seriousness of the offense here[,]" *id.* We said that "'[g]eneral deterrence is crucial in the child pornography context[,]'" and that "we do not see how Bistline's sentence would meaningfully deter him or anyone else." *Id.* at 767 (first alteration in original) (quoting *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)). We said that "[w]e do not mean to imply that only a sentence in or around" Bistline's guidelines range of 63 to 78 months' imprisonment "will avoid disparities with other similar defendants[,]" but that "we do not see how the sentence imposed here avoids them." *Id.* We said that "the district court was entitled to consider" Bistline's age, health, and family circumstances, but that "they cannot justify the sentence imposed here." *Id.* And we cautioned that "criminals with privileged backgrounds are [not] more entitled to leniency than those who have nothing left to lose." *Id*. at 766 (internal quotation marks omitted). We concluded that "the sentence imposed in this case does not remotely meet the criteria that Congress laid out in § 3553(a)"; and we remanded Bistline's case "for prompt imposition of one that does." *Id*. at 768.

And yet, despite all these unequivocal statements by our court, the district court again sentenced Bistline to one day's confinement and ten years' supervised release. The court made only one change to Bistline's sentence, extending his period of home confinement from 30 days to three years. The government brought this appeal.

"We review a district court's sentencing decision for substantive reasonableness under the abuse-of-discretion standard." *United States v. Shaw*, 707 F.3d 666, 674 (6th Cir. 2013). "A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *Id.* (internal quotation marks omitted).

On remand the district court repeated many of the same errors that it made during Bistline's first sentencing. The court again failed to make the Sentencing Guidelines its "starting point" and "initial benchmark" for choosing Bistline's sentence. *See Bistline I*, 665 F.3d at 761–64; *see also Peugh v. United States*, ___ S. Ct. ___, 2013 WL 2459523, at *5 (June 10, 2013) ("the Guidelines should be the starting point and the initial benchmark"). Indeed on remand the district court never mentioned Bistline's guidelines range. The court did say that it "continues to have significant concerns about the helpfulness" of "the guidelines relating to child pornography[,]" and that it has "a continued disagreement with the range of sentences that result under these guidelines in the average case[.]" But those comments were merely conclusions, rather than reasons to disagree with the guidelines on policy grounds.

The court did offer reasons for its disagreement with two guideline enhancements in particular. Specifically, the court criticized the enhancement for Bistline's use of a computer in connection with his offense, *see* U.S.S.G. § 2G2.2(b)(6), stating that "[c]omputers are present in every case." The court similarly criticized the enhancement for the number of images that Bistline possessed, *see* U.S.S.G. § 2G2.2(b)(7), stating that "almost every case involves hundreds of images and videos." Those criticisms are legitimate so far as they go, although it is surely little comfort for Kylie and Vickie—the victims whose statements were read at Bistline's sentencing hearings—that Bistline viewed images of dozens of other girls being raped in addition to viewing theirs. But the court entirely overlooked that Bistline's base-offense level, standing alone, would place his guidelines range in the neighborhood of three years. And the court continued to treat the issue of the guidelines' validity strictly as a question of social science. That

is true despite our statements in the first appeal that it is "Congress's prerogative to dictate sentencing enhancements based on a retributive judgment that certain crimes are reprehensible and warrant serious punishment as a result"; and that "Congress's long and repeated involvement in raising the offense levels for § 2G2.2 makes clear that the grounds of its action were not only empirical, but retributive—that they included not only deterrence, but punishment." *Bistline I*, 665 F.3d at 764. The district court did not acknowledge, much less refute, those bases for Bistline's guidelines range. Taken as a whole, therefore, the district court's comments did not begin to approach the showing necessary for a court to "declin[e] to apply § 2G2.2 out of hand[,]" *id.*—which is exactly what the district court did here.

The district court likewise continued to diminish the "seriousness of [Bistline's] offense." 18 U.S.C. § 3553(a)(2)(A). Indeed the court's comments with regard to Bistline's culpability during the second sentencing hearing were remarkably similar to its comments during the first one. For example, the court stated that Bistline was not as culpable as some other defendants because he was "not a sophisticated computer user" and did not "know how to put the [LimeWire] program on his computer." (Bistline's son put LimeWire on Bistline's computer for him.) But downloading LimeWire was not the offense here; downloading child pornography was. And Bistline himself chose to download child pornography onto his computer "affirmatively, deliberately, and repeatedly, hundreds of times over, in a period exceeding a year." *Bistline I*, 665 F.3d at 765. The district court likewise blamed "the technology involved where some of the same files are downloaded over and over again by these automatic downloading programs." But that notion—that these images "automatic[ally]" downloaded themselves onto Bistline's computer—is utterly without support in the record. LimeWire did not commit Bistline's offense; Bistline did. And thus, once again, "[w]e can only read the court's comments . . . to reflect a sense that the offense is not serious, and that the hundreds of images found on Bistline's computer—a great many of them showing young girls being raped—somehow sought out Bistline more than he sought out them." *Bistline I*, 665 F.3d at 765.

The district court likewise put little weight on the need for Bistline's sentence to deter other potential violators of the child pornography laws. The court did say that "an informed observer who knew about the unique facts of this case would also believe that this sentence was sufficiently severe to adequately deter others from engaging in this kind of offense conduct." But that statement is merely conclusory. And we otherwise fail to see how a period of home confinement would afford adequate deterrence for the crime at issue here—particularly given that Bistline, by his own admission, was already largely self-confined to his home.

The district court also put an unreasonable amount of weight on Bistline's age and poor health. Although in exceptional cases a court may rely on these factors to support a below-guidelines sentence, *see* U.S.S.G. §§ 5H1.1, 5H1.4, 5K2.22, they simply "cannot justify the sentence imposed here." *Bistline I*, 665 F.3d at 767. Bistline's age and health issues are not as extraordinary as he and the district court seem to think they are. There are plenty of older convicts with medical conditions of their own in federal prisons. And prison is stressful and less than ideal medically for many people who are sent there. Bistline may be elderly and in poor health, but "the elderly do not have a license to commit crime, and adequate medical care is available in federal prisons." *United States v. Moreland*, 703 F.3d 976, 991 (7th Cir. 2012) (Posner, J.) (citation omitted).

We will not belabor the issue further. Throughout the process of imposing Bistline's first sentence and then his second, the district court placed excessive weight on the few factors that favor a lesser sentence, while minimizing or disregarding altogether the serious factors that favor a more severe one. The result once again was an abuse of the district court's discretion. The sentence imposed on remand does not "reflect the seriousness of the offense"; it does not meet the retributive goal of "provid[ing] just punishment for the offense"; and it does not "afford adequate deterrence to criminal conduct[,]" among other deficiencies. 18 U.S.C. § 3553(a)(2)(A), (B). Bistline's sentence is substantively unreasonable.

The government also requests that we reassign the case to a different district judge for resentencing.  In deciding whether to reassign a case, we consider, among other factors, "whether the original judge would reasonably be expected . . . to have substantial difficulty in putting out of his mind previously-expressed views or findings[.]" *United States v. Garcia-Robles*, 640 F.3d 159, 168 (6th Cir. 2011) (first alteration in original) (quoting *Bercheny v. Johnson*, 633 F.2d 473, 476–77 (6th Cir 1980)).  The record in this case makes clear that the district judge would have such difficulty here.  Moreover, on remand, the district judge said the following:  "If I have got to send somebody like Mr. Bistline to prison, I'm sorry, someone else will have to do it.  I'm not going to do it." We therefore grant the government's request to reassign the case.

Bistline's sentence is vacated, and the case remanded for reassignment and resentencing.